1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                              DISTRICT OF ARIZONA

10

11   Sherree Birtciel, *et al.*,                )
                                                 )
12                      Plaintiffs,              )        2:13-cv-02511 JWS
                                                 )
13            vs.                                )        ORDER AND OPINION
                                                 )
14   XL Specialty Insurance, a property          )
     and casualty insurer, a foreign             )
15   company, *et al.*,                          )        [Re: Motion at Docket 44]
                                                 )
16                      Defendants.              )
     _____            )
17

18                           **I.  MOTION PRESENTED**

19            At docket 44, Defendant XL Specialty Insurance ("Defendant" or "XL Specialty")

20   filed a motion to disqualify and strike the testimony of Plaintiffs' expert Dr. Joshua

21   McConkey.  Defendant argues that its motion should be granted because

22   Dr. McConkey's proposed testimony contradicts the position Plaintiffs took when

23   securing a default judgment in the underlying wrongful death action against XL

24   Specialty's insured, JetArizona, Inc. ("JetArizona").  Plaintiffs oppose the motion at

25   docket 46.  Defendant replies at docket 48.  Oral argument was requested but would

26   not be of additional assistance to the court.

27

28

**II.  BACKGROUND**

The declaratory judgment action here stems from the death of Plaintiffs' decedent, Steven Birtciel.  In April of 2005, Mr. Birtciel was admitted to Navapache Regional Medical Center in Show Low, Arizona, for pneumonia and hypomangesemia. When his condition worsened, he was transported to Phoenix for treatment via a JetArizona air ambulance.  Upon arrival in Phoenix, Mr. Birtciel was moved from the air ambulance to a ground ambulance operated by Southwest Ambulance and then transferred to the nearest Phoenix hospital.  At some point during the transfer, Mr. Birtciel's breathing tube became dislodged and his airway lost.  He went into cardiac arrest.  Upon arrival at the hospital, the paramedics were performing CPR.  Mr. Birtciel never regained consciousness and died three days later.

Shortly thereafter, Plaintiffs filed a wrongful death suit in state court against the ground ambulance company, Southwest Ambulance, and JetArizona, among others ("Underlying Action").  JetArizona had an aviation insurance policy and commercial liability policy through XL Specialty, but it had ceased doing business a few months after Mr. Birtciel's death.  Thus, when Plaintiffs initiated the Underlying Action against JetArizona no party tendered the case for coverage under the XL Specialty policies. Plaintiffs reached a settlement with the Southwest Ambulance in 2011.  XL Specialties first learned of the case in October 2012 when it received notice from Plaintiffs that they were seeking default judgment against JetArizona and that default judgment had been entered against one of JetArizona's employees.

XL Specialty retained counsel to review the claim and make a coverage determination.  Plaintiffs and the other defendants in the wrongful death action provided XL Specialty with the "relevant pleadings, testimony, and expert opinions regarding [Mr. Birtciel's] death that the parties had developed over the five-year litigation."[1] Specifically, from Plaintiffs XL Specialty received copies of their answers to

---

[1]Doc. 44 at p. 5.

interrogatories, their responses to requests for admissions, their Rule 26.1 disclosures, and one of the named defendant's answers to interrogatories and disclosures.[2] Plaintiffs' sixth supplemental disclosure statement identified Dr. Haskell as an expert who would provide an expert opinion about the standard of care provided to Mr. Birtciel during the ground transport.  Plaintiffs' eleventh, thirteenth, and seventeenth supplemental disclosure statement identified Dr. Repsher as someone who would provide an expert opinion about the cause of Mr. Birtciel's death and the standard of care provided to Mr. Birtciel.[3]  "[A]fter carefully reviewing the evidence in the Underlying Action and after relying on plaintiffs' position and disclosures . . . [XL Specialty] denied coverage and did not seek to oppose or set aside any default judgments in the Underlying Action."[4]  According to XL Specialty, they made such a determination because the Underlying Action did not allege claims arising out of the ownership, maintenance, or use of the aircraft as is required for coverage under the aviation insurance policy nor did it allege claims arising from any occurrence on JetArizona's premises as is required for coverage under the commercial liability policy.[5]  Plaintiffs subsequently obtained a default judgment against JetArizona for just over $4 million.

Plaintiffs now bring the current action against XL Specialty seeking a declaration of coverage under Jet Arizona's insurance policies with XL Specialty.  As part of this action, Plaintiffs have disclosed Dr. Joshua McConkey as an expert witness.  He was not a witness in the Underlying Action.  Dr. McConkey opines, based on his review of the medical records, transportation records, and depositions in this case, that Mr. Birtciel's breathing tube was dislodged while on the JetArizona aircraft or just as he was being offloaded from the aircraft to the ambulance.  Defendant asks the court to

---

[2]Doc. 46-12.

[3]Doc. 44-1 at pp. 2-13.

[4]Doc. 44 at p. 6.

[5]Doc. 44 at p. 6.

1  disqualify or strike this opinion, arguing that it is contrary to the position taken by

2  Plaintiffs and their experts in the Underlying Action, which was that the tube became

3  dislodged outside the airplane.

### III.  DISCUSSION

4
5      Defendant asks this court to strike the testimony of Dr. McConkey based on

6  equitable, judicial, or quasi estoppel.  Under all three of these estoppel doctrines, an

7  inconsistent act or position on the part of Plaintiffs is required.  For equitable estoppel to

8  apply, the party to be estopped must have committed acts inconsistent with a position

9  or claim it later adopts and the opposing party must then rely on those acts and suffer

10 an injury as a result of the repudiation of such acts.[6]  Quasi-estoppel is essentially the

11 same but it does not require a showing of reliance and instead is applied by the court to

12 prevent an unjust or unconscionable result.[7]  Judicial estoppel is only applicable if a

13 party asserts a position that is clearly inconsistent with its original position and has

14 persuaded the court of the earlier position, thereby gaining an unfair advantage or

15 imposing an unfair detriment on the opposing party.[8]  Thus, striking Dr. McConkey's

16 testimony is warranted only if it constitutes a position taken by Plaintiffs that is

17 inconsistent with their positions or actions taken in the Underlying Action.

18     Defendant argues that "Plaintiffs undisputedly took the position in the Underlying

19 Action that no actions in the JetArizona aircraft led to [Birtciel's] death."[9]  Defendant

20

21

22 [6]*Valencia Energy Co. v. Arizona Dep't of Revenue*, 959 P.2d 1256, 1267-68 (Ariz. 1998).

23 [7]*Donaldson v. LeNore*, 112 Ariz. 199, 202, 540 P.2d 671, 674 (Ariz. 1975);

24 [8]*United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008).  The parties cite state
   law, but federal law governs the application of judicial estoppel in federal courts.  *Rissetto v.
25 Plumbers and Steamfitters Local 343,* 94 F.3d 597, 603 (9th Cir. 1996).  Regardless, Arizona
   law is essentially the same in that judicial estoppel prevents a party from asserting or offering
26 proof to support one position and then later in another action between the parties take a
   contrary position on the same issue.  *State Farm Auto Ins. Co. v. Civil Serv. Emps. Ins. Co.*,
27 509 P.2d 725, 730 (Ariz Ct. App. 1973).

28 [9]Doc. 48 at p. 3.

argues that by putting forth Dr. McConkey to establish that the tube became dislodged around the time the paramedics were moving Birtciel from the air ambulance to the ground ambulance necessarily means that they are taking a different factual position in this litigation than in the previous litigation.  Defendants point to the proposed testimony of Drs. Haskell and Repsher, two experts Plaintiffs planned to use in the Underlying Action, as proof of this prior position.

One of Plaintiffs' supplemental disclosure statements in the Underlying Action indicates that Dr. Haskell planned to testify that the failure of the ground ambulance crew to apply a four-point harness on Mr. Birtciel's harness was below the applicable standard of care and that had a harness been used, the tube would not have become dislodged.[10]  This expert testimony, however, does not set Plaintiffs' factual position in the Underlying Action.  In the Underlying Action, Plaintiffs' theory was that Mr. Birtciel died due to a prolonged lack of oxygen after his breathing tube was dislodged and that the defendants had been negligent in a variety of different ways that led to the prolonged lack of oxygen.  There was contradicting deposition testimony in the case. One paramedic, Gordon Mustin, testified that during the ground transport the ambulance made a sudden movement which caused Mr. Birtciel to slide off the gurney, dislodging his breathing tube.[11]  Mr. Mustin's testimony was not supported by the other witnesses present in the ambulance, none of whom recall Mr. Birtciel sliding off the gurney or exactly when the tube became dislodged.[12]  The fact section of Plaintiffs' initial Rule 26.1 disclosure statement indicates it may have been dislodged before Mr. Birtciel was loaded into the ground ambulance.[13]  Presumably, Plaintiffs asserted negligence on the part of all the defendants regardless of the exact sequence of events.

---

[10]Doc. 44-1 at p. 2.

[11]Doc. 44-1 at p. 9; Doc. 46-8 at p. 4.

[12]Doc. 46-5 at p. 2; Doc. 46-6 at p. 4; Doc. 46-7 at p. 4; Doc. 46-9 at p.4.

[13]Doc. 46-4 at p. 2.

Thus, Dr. Haskell's testimony is just one piece of evidence Plaintiffs planned to use to demonstrate negligence on the part of the ambulance employees in the event Mr. Mustin's version of the facts were to be given credence.

Plaintiffs' later supplemental disclosure statements involving Dr. Repsher make clear that Plaintiffs left open the possibility that the tube became dislodged at the time Mr. Birtciel was being unloaded from the air ambulance. The statements indicate that Dr. Repsher planned to testify that the prolonged lack of oxygen to Mr. Birtciel's brain after his breathing tube had been dislodged caused Mr. Birtciel's death.  One of the statements specifically points out the contradicting evidence as to when the tube became dislodged and states that Dr. Repsher would nonetheless conclude that the ground ambulance employees contributed to that prolonged oxygen deprivation whether the dislodgement occurred as part of the unloading process or during the subsequent drive.[14]  Another statement indicates that Dr. Repsher would testify that improper ventilation occurred after the flight, not during the flight,[15] but such testimony only rules oxygen deprivation during the flight; it does not rule out the possibility that the tube became dislodged after the plane landed and around the time Mr. Birtciel was being offloaded from the air ambulance and then the prolonged reduced ventilation occurred after that.  Therefore, Dr. Repsher's opinion in the Underlying Action does not directly contradict Dr. McConkey's proposed opinion.

Moreover, there was other information in Plaintiffs' disclosures to notify Defendant of the possibility that dislodgement of the tube could have occurred after the flight itself but while Mr. Birtciel was still in, partially in, or just immediately outside the air ambulance.  Plaintiffs' first Rule 26.1 disclosure statement notes that one of the emergency room doctors stated that the transport crew advised her that after they had unloaded Mr. Birtciel from the airplane and as the ground ambulance started to leave

---

[14]Doc. 44-1 at pp. 9-10.

[15]Doc. 44-1 at pp. 12-13.

the airport, Mr. Birtciel suffered cardiac arrest and that is when they noticed the tube had become dislodged, suggesting that the breathing tube became dislodged around the time of transfer while still at the airport.[16]

It is not clear to the court what other information Defendant had in its possession when it made its initial coverage review.  Defendant states that it had information from not only the Plaintiffs but also the other defendants, and it states that it had all relevant deposition testimony.  The deposition testimony provided to the court by Plaintiffs demonstrate that both Dr. Haskell and Dr. Repsher clarified during their depositions that the witness accounts of what happened varied and that they could not say for sure when the dislodgement occurred.[17]  Their testimony was being used to establish negligence, not coverage.  Such testimony further strengthens the court's conclusion that Plaintiffs' use of Dr. Haskell and Dr. Repsher as expert witnesses in the Underlying Action fails to demonstrate that they committed to a position as to where exactly the breathing tube became dislodged.  Defendant points to no other communication, court filing, evidentiary basis, or action on the part of Plaintiffs to show otherwise.

The fact that Southwest Ambulance settled with Plaintiffs does not demonstrate that Plaintiffs took a position as to when and where dislodgement occurred.  Based on the materials provided, Plaintiffs' position as to Southwest Ambulance in the Underlying Action was that the Southwest Ambulance employees involved in Mr. Birtciel's transport were negligent—whether from contributing to dislodgement during unloading, causing dislodgement by failure to secure Mr. Birtciel on the gurney, delaying arrival at the hospital, or failing to reestablish his airway—and their negligence at least partially caused Mr. Birtciel's death.  By settling with Southwest Ambulance, Plaintiffs did not necessarily lock themselves into a position.  Indeed, as noted by Plaintiffs, coverage under the policies was not an issue in the Underlying Action.  The legal theory in that

---

[16]Doc. 46-4 at p. 2.

[17]Doc. 46-10 at pp. 3-4; Doc. 46-11 at pp. 2, 7.

1  action was focused on negligence resulting in prolonged oxygen deprivation, and

2  Plaintiffs' disclosure statements focused on all facts that could support such a finding.

3      Plaintiffs' factual position in the Underlying Action was not clearly inconsistent

4  with the factual position proposed here and, thus, the application of the various

5  estoppel doctrines to bar Dr. McConkey's testimony is unwarranted.

6  ### IV.  CONCLUSION

7      Based on the preceding discussion, Defendant's motion at docket 44 is DENIED.

8  DATED this 9th day of January 2015.

9

10

11                              /s/ JOHN W. SEDWICK
                        SENIOR UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28